1

2

3                                                    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  IT'S JUST LUNCH              )   Case No. EDCV 08-367-VAP
    INTERNATIONAL LLC, a         )   (JCRx)
12  Nevada Corporation,          )
                                 )   **[Motion filed on August 20,**
13              Plaintiff,       )   **2008]**
                                 )
14      v.                       )   **ORDER GRANTING IN PART AND**
                                 )   **DENYING IN PART**
15  ISLAND PARK ENTERPRISE       )   **COUNTERDEFENDANTS' MOTION TO**
    GROUP, INC., a New York      )   **DISMISS**
16  Corporation,                 )
                                 )
17              Defendants.      )
    _____    )
18  ISLAND PARK ENTERPRISE       )
19  GROUP, INC., a New York      )
    corporation, and            )
    JOANNE BLOOMFIELD, an        )
20  individual,                  )
                                 )
21                               )
        Counterclaimants,        )
22                               )
    v.                           )
23                               )
    IT'S JUST LUNCH              )
24  INTERNATIONAL, LLC, a        )
    Nevada limited liability )
25  company, DANIEL DOLAN,       )
    an individual, and IRENE )
26  LACOTA, an individual,       )
                                 )
27      Counterdefendants.       )
    _____    )
28

Counterdefendants' Motion to Dismiss came before the
Court for hearing on September 15, 2008.  After reviewing
and considering all papers filed in support of, and in
opposition to, the Motion, as well as the arguments
advanced by counsel at the hearing, the Court GRANTS IN
PART Counterdefendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiff It's Just Lunch International, LLC
("Plaintiff" or "IJL") filed this action.  On April 17,
2008, Defendant Island Park Enterprise Group, Inc.
("Island Park") filed a Counterclaim ("Countercl.").

After various amendments, the pleadings now stand in
the following position: IJL, the sole named plaintiff,
brings suit against Island Park and Joanne Bloomfield
("Bloomfield") as Defendants.  Island Park and
Bloomfield, who are referred to collectively here as
"Counterclaimants," have filed a counterclaim against
IJL, Daniel Dolan, and Irene LaCota, collectively
referred to here as "IJL."  The Complaint alleges
Defendant and franchisee Island Park failed to pay
required franchise fees and otherwise perform under two
franchise agreements with Plaintiff, franchisor It's Just
Lunch.

On August 20, 2008, IJL filed a Motion to Dismiss ("Mot.") the fourth claim (violation of California and New York franchise practice acts) and the seventh claim (California Business and Professions Code § 17200) of the First Amended Counterclaim.  IJL also filed a supporting Memorandum of Points and Authorities.  ("IJL Mem. P. & A.")  Counterclaimants filed Opposition to the Motion to Dismiss on September 2, 2008.  ("Opp'n".)  IJL filed a Reply in Support of the Motion to Dismiss on September 8, 2008.  ("Reply".)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955, 1964 (2007).  In addition, the Court must accept all material allegations in the complaint -- as well as any reasonable inferences to be drawn from them -- as true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

1    "While a complaint attacked by a Rule 12(b)(6) motion
2    to dismiss does not need detailed factual allegations, a
3    plaintiff's obligation to provide the 'grounds' of his
4    'entitlement to relief' requires more than labels and
5    conclusions, and a formulaic recitation of the elements
6    of a cause of action will not do."  <u>Bell Atlantic</u>, 127 S.
7    Ct. at 1964-65 (citations omitted).  Rather, the
8    allegations in the complaint "must be enough to raise a
9    right to relief above the speculative level."  <u>Id</u>. at
10   1965.

11

12   Although the scope of review is limited to the
13   contents of the complaint, the Court may also consider
14   exhibits submitted with the complaint, <u>Hal Roach Studios,</u>
15   <u>Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19
16   (9th Cir. 1990), and "take judicial notice of matters of
17   public record outside the pleadings," <u>Mir v. Little Co.</u>
18   <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

19

20                          **III. DISCUSSION**
     This dispute involves a franchise agreement with a
21   choice of law provision requiring application of Nevada
22   law.  (IJL Mem. P. & A. 2.)  IJL urges enforcement of the
23   choice of law provision and asserts that Counterclaimants
24   fail to state a claim upon which relief can be granted
25   under Nevada law, or, if the choice of law provision is
26   not enforced, under California law.  (IJL Mem. P. & A.
27   2-3.)
28

                                 4

1

2    Counterclaimants argue (1) the choice of law

3 provision should not be enforced, and (2) they state

4 claims under California and New York law.  (Opp'n 5, 14.)

5

6 **A.   Choice of Law**

7    Both parties agree that California choice of law

8 analysis should govern the enforcement of the choice of

9 law provision.  (IJL Mem. P. & A. 8; Opp'n 5-6.)

10 California uses the test set forth in Nedlloyd Lines B.V.

11 v. Superior Court to determine whether to enforce a

12 choice of law provision.  3 Cal. 4th 459 (1992).  This

13 test draws heavily on section 187 of the Restatement

14 Second of Conflict of Laws ("Restatement").  Id. at 464-

15 66.

16

17    Under Nedlloyd, California will apply the law

18 indicated by the choice of law provision where:

19 "[1] the chosen state has a substantial relationship to

20 the parties or their transaction," or where "[2] there is

21 any other reasonable basis for the parties' choice of

22 law."  Id. at 466.  "If neither of these tests is met,

23 that is the end of the inquiry, and the court need not

24 enforce the parties' choice of law."  Id. at 466.

25

26    Where either test is met, the court proceeds to the

27 second step and "determine[s] whether the chosen state's

28

1   law is contrary to a fundamental policy of California."
2   Id. at 466. Once the party who seeks application of the
3   choice of law provision demonstrates a substantial
4   relationship, the party who would avoid the choice of law
5   provision bears the burden of showing that the California
6   law embodies a fundamental policy.  See id. at 471.

7

8       Where "there is a fundamental conflict with
9   California law," the court proceeds to the third step and
10  "determine[s] whether California has a materially greater
11  interest than the chosen state in the determination of
12  the particular issue.  If California has a materially
13  greater interest than the chosen state, the choice of law
14  shall not be enforced, for the obvious reason that in
15  such circumstance we will decline to enforce a law
16  contrary to this state's fundamental policy."  Id. at 466
17  (internal citations and quotations omitted).

18

19      1.   Substantial Relationship
20      Applying the Nedlloyd test here, the court must first
21  determine "whether the chosen state has a substantial
22  relationship to the parties or their transaction . . . ."
23  Nedlloyd, 3 Cal. 4th at 466.  This requirement is easily
24  satisfied: Plaintiff has a substantial relationship with
25  Nevada because IJL is a Nevada limited liability company.
26  (Countercl. ¶ 3; see Nedlloyd, 3 Cal. 4th at 467.)

27

28

### 2.  Fundamental Policy

As a substantial relationship exists, the court next "determine[s] whether the chosen state's law is contrary to a *fundamental* policy of California" or that of a third state.  Id. at 466, 467 n.5.  Where enforcement of the choice of law provision would run counter to a fundamental policy of California or a third state, then the court must refuse to enforce the choice of law provision if it finds that "California has a 'materially greater interest than the chosen state in the determination of a particular issue . . . .'"  Id. at 466.

There is no bright-line definition of a "fundamental policy."  Restatement § 187 comment g.  A fundamental policy must be "substantive," and "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power."  Id.

Here Counterclaimants' fourth claim is based on the California Franchise Investment Law ("CFIL"), or, in the alternative, on the New York Franchise Sales Act; their seventh claim is based on California Business and Professions Code section 17200.  (Countercl. ¶ 72, 75, 88-93.)  The CFIL has been found to embody a fundamental California policy, while the Courts have split over the question of whether section 17200 does.

1     The CFIL protects franchisees against franchisors who

2 may have superior bargaining power.  See Cal. Corp. Code

3 § 31001 (CFIL enacted to address losses suffered by

4 franchisees due to franchisor failure to provide complete

5 information); Restatement comment g (fundamental policies

6 may "protect a person against the oppressive use of

7 superior bargaining power").  The California legislature

8 described the provisions and intent of the CFIL as

9 follows:

10           It is the intent of this law to provide
          each prospective franchisee with the
11           information necessary to make an
          intelligent decision regarding
12           franchises being offered. Further, it is
          the intent of this law to prohibit the
13           sale of franchises where the sale would
          lead to fraud or a likelihood that the
14           franchisor's promises would not be
          fulfilled, and to protect the franchisor
15           and franchisee by providing a better
          understanding of the relationship
16           between the franchisor and franchisee
          with regard to their business
17           relationship.

18 Cal. Corp. Code § 31001. At least two courts have read

19 the CFIL as constituting an important protection for

20 franchisees.  America Online, Inc. v. Superior Court, 90

21 Cal. App. 4th 1, 11 (2001) (CFIL "enacted to protect the

22 statute's beneficiaries from deceptive and unfair

23 business practices"); Cottman Transmission Systems LLC v.

24 Kershner, 492 F. Supp. 2d 461, 467-70 (E.D. Pa. 2007).

25

26     In Cottman, a Pennsylvania district court found that

27 California and New York's protections of franchisees

28

1  "express[ed] a clear policy to provide a heightened
2  degree of protection to prospective franchisees regarding
3  misrepresentations about a franchise system."  492 F.
4  Supp. 2d at 467.  Here, the Court finds that the CFIL and
5  New York laws express fundamental policies because
6  Counterclaimants are franchisees who claim the need for
7  protection against a franchisor's misrepresentations and
8  other unfair practices.
9
10      The authorities are more conflicting as to whether
11  section 17200 embodies a fundamental policy of
12  California.  The language of the statute, which forbids
13  unlawful, unfair or fraudulent business practices, hews
14  close to the spirit of a fundamental policy as described
15  in Restatement 187 comment g.  Cal. Bus. & Prof. Code §
16  17200.  The Restatement comment defines a fundamental
17  policy as one that "makes one or more kinds of contracts
18  illegal or which is designed to protect a person against
19  the oppressive use of superior bargaining power."  Courts
20  have differed on whether section 17200 embodies a
21  fundamental policy, depending on the underlying
22  violation.  See Cardonet, Inc. v. IBM Corp., 2007 WL
23  518909, *5 (N.D. Cal.)[1]  Here Counterclaimants allege
24  _____
25      [1]For example, the Cardonet court at *5 noted that
    section 17200 was found to embody a fundamental
26  California policy when applied to a dispute about a
    covenant not to compete in Application Group, Inc. v.
27  Hunter Group Inc., 61 Cal. App. 4th 881, 907-08 (1998).
    In a different dispute cited by the Cardonet court,
28                                        (continued...)

9

that all of IJL's actions constituted illegal trade practices in violation of section 17200.  (Countercl. ¶ 90.)

To recap, IJL has demonstrated a substantial relationship with Nevada law, satisfying the first step in the <u>Nedlloyd</u> test.  As Counterclaimants seek to avoid application of the choice of law provision, under <u>Nedlloyd</u>, Counterclaimants bear the burden of demonstrating that section 17200 embodies a fundamental policy.  <u>See</u> <u>Nedlloyd</u>, 3 Cal. 4th at 471.  Neither IJL nor Counterclaimants cite any authority to support their positions on this question.  (IJL Mem. P. & A. 9, Reply 6-7; Opp'n 6.)  As Counterclaimants bear the burden here, and fail to state with any precision which actions or violations they seek to address with the section 17200 claim, the Court declines to find that section 17200 embodies a fundamental policy in California as used here.

---

[1](...continued)
<u>Nibeel v. McDonald's Corp.</u> 1998 WL 547286 *11 (N.D. Ill. 1998), section 17200 was not found to embody a fundamental policy because the protections afforded by California law and those of the state selected by the choice-of-law clause were similar.  Mere differences between California law and that of the state selected by the choice-of-law provision, however, do not transform the California law into one embodying a fundamental policy.  <u>MediaMatch v. Lucent</u>, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).  Counterclaimants' seventh claim cannot neatly be categorized because they allege that all of IJL's actions violate section 17200.  (Countercl. ¶ 90.)

1     In sum, the Court finds that the law on which
2  Counterclaimants base claim four embodies a fundamental
3  California policy, but that the laws on which
4  Counterclaimants base claim seven do not embody such a
5  policy.

6

7     **3.   Materially Greater Interest**

8     Having determined that the California franchise law
9  expresses fundamental policy, the Court considers whether
10 California or New York have materially greater interests
11 than Nevada in enforcing their laws.  The Cottman court
12 considered a similar situation and found that California
13 and New York had materially greater interests than did
14 Pennsylvania, the state identified in a choice-of-law
15 clause, in enforcing its laws.

16

17    In Cottman, the franchisor was headquartered in
18 Pennsylvania and sought to enforce a choice of law clause
19 requiring application of Pennsylvania law.  Cottman, 492
20 F. Supp. 2d at 467-68.  The facts here are similar to
21 those before the Cottman court; Counterdefendant IJL is
22 incorporated in Nevada but resides in California while
23 Counterdefendants Daniel Dolan and Irene LaCota reside in
24 California.  (Countercl. ¶¶ 3-5.)  Counterclaimants
25 reside in New York.  (Id. ¶¶ 1-2.)  Nevada's interest
26 here in enforcing its laws, compared to the interests of
27 California and New York, therefore seems equivalent to
28

11

1  Pennsylvania's interest in <u>Cottman</u>.  There, the

2  franchisor was headquartered in Pennsylvania and sought

3  to enforce Pennsylvania law; here, the franchisor is

4  incorporated in Nevada and seeks to enforce Nevada law.

5  (Countercl. ¶¶ 2-5); <u>see</u> <u>Cottman</u>, 492 F. Supp. 2d at 467-

6  68.[2]  IJL fails to support its position that California

7  and New York do not have materially greater interests in

8  enforcing their laws. (IJL Mem. P. & A. 9; Reply 7.)

9  This Court therefore declines to enforce the choice of

10 law provision as to claim four.[3]

11

12 **B.   Fourth Claim**

13     IJL argues Counterclaimants' claim under the CFIL

   fails because the franchise was located in New York, not

14 California, and California Corporations Code section

15 31105 therefore bars it.  (IJL Mem. P. & A. 4; Cal. Corp.

16

17 _____

18     [2]"There is no franchise disclosure law in Nevada,
   and, thus, to enforce the choice of law provision in this
   case would defeat the strong fundamental policy of
19 California's law."  <u>Cottman</u>, 492 F. Supp. 2d at 468
   citing <u>Chong v. Friedman</u>, 2005 WL *4 (Cal. Ct. App.)
20 (unpublished).

21     [3]Other courts have refused to enforce the same choice
   of law provision using different reasoning.  <u>See</u> Order
22 Denying Counterdefendants' Motion to Dismiss, Mar. 8,
   2007 (It's Just Lunch Int'l LLC v. Nichols, Case No. ED
23 CV 06-01127-SGL); <u>It's Just Lunch Int'l LLC v. Polar Bear
   Inc</u>., 2004 WL 3406117 (unpublished). These authorities
24 read Restatement section 187 to allow an allegation of
   fraud regarding the contract *as a whole* to prevent
25 enforcement of the choice of law claim.  This Court reads
   Restatement section 187 to require an allegation of fraud
26 regarding the choice of law claim itself to obtain the
   same effect.  As Counterclaimants do not allege fraud in
27 the inclusion of the choice of law claim, (<u>see</u>
   Counterclaim ¶¶ 58-66), the choice of law analysis above
28 is necessary.

Code § 31105.)  Section 31105 of the California
Corporations Code provides:

> Any offer, sale, or other transfer of a
> franchise, or any interest in a
> franchise, to a resident of another
> state or any territory or foreign
> country, shall be exempted from the
> provisions of Chapter 2 (commencing with
> Section 31110) of this part, if all
> locations from which sales, leases or
> other transactions between the
> franchised business and its customers
> are made, or goods or services are
> distributed, are physically located
> outside this state.

Counterclaimants' franchise is located out-of-state
and Counterclaimants allege claims under section 31110
and 31111 in their fourth claim.  (Countercl. ¶¶ 73-74.)
Thus, on its face, section 31105 appears to require
dismissal of the fourth claim.  A closer reading of
section 31105, however, reveals that such a superficial
reading of the statute is flawed.

Section 31105 only precludes claims under Part 2,
Chapter 2, of the California Corporations Code.
Counterclaimants, however, rely on sections *outside* of
Part 2, Chapter 2, including sections 31201 and 31220.
(Countercl. ¶ 77.)  Accordingly, insofar as IJL relies on
the provisions of section 31105, the dismissal of
Counterclaimants' fourth claim is unwarranted.

Finally, IJL contends the Court should dismiss the
CFIL claim on the basis of the parol evidence rule.  (IJL

1   Mem. P. & Am. 5-6.)  According to IJL, the Franchise
2   Agreement signed by Counterclaimants contains an
3   enforceable integration clause (Compl. Ex. 1 ¶ 19(f); Ex.
4   2 ¶ 19(f)), and application of the parol evidence rule
5   will bar the evidence necessary to sustain
6   Counterclaimants' allegations of violations of the CFIL.
7
8       This argument lacks merit.  Counterclaimants have
9   alleged that IJL made unregistered earnings claims,
10  including fraudulent statements, in connection with
11  offering and selling of a franchise, and that this
12  violated franchise laws.  (Countercl. ¶¶ 71, 73-74.)  The
13  fourth claim, which addresses franchise laws,
14  incorporates the paragraphs of the second claim (for
15  fraud and deceit).  (Countercl. ¶¶ 71-72.)  The second
16  claim alleges that It's Just Lunch and Dolan made
17  fraudulent statements orally and/or in writing about the
18  actual or potential level of income or sales for
19  franchise locations before the franchise agreements were
20  signed.  (Countercl. ¶¶ 58-60, 74.)  These statements
21  include that certain locations would be profitable, that
22  the franchise system as a whole was profitable, and that
23  a location had never been closed.  (Countercl. ¶¶ 58-66,
24  71-72.)  Read together, the Counterclaim alleges that IJL
25  made specific fraudulent oral statements about earnings
26  in conjunction with the offer and sale of a franchise.
27
28

1   Defendants rely on the parol evidence rule to compel
2   dismissal of the seventh claim.  The rule barring
3   reliance on parol evidence when the parties enter into a
4   contract with an integration clause does not apply where
5   fraud is alleged sufficiently.  <u>See</u> Cal. Code Civ. P. §
6   1856(g); <u>see also Polar Bear</u>, WL 3406117**.**  Here, as
7   discussed above, Counterclaimants have alleged fraud in
8   connection with the sale of franchises.  The Court now
9   turns to whether those allegations were made with
10  sufficient detail.

11

12  Fraud allegations must "be specific enough to give
13  defendants notice of the particular misconduct so that
14  they can defend against the charge and not just deny that
15  they have done anything wrong."  <u>Vess v. Ciba-Geigy Corp.</u>
16  <u>USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal
17  quotations omitted).  To meet this standard, the pleading
18  must allege "the who, what, when, where, and how of the
19  misconduct charged."  <u>Id.</u>  (citations and quotations
20  omitted).  A plaintiff alleging fraud under state law
21  before a federal court must plead with sufficient
22  particularity to satisfy Fed. R. Civ. P. 9(b).  Id. at
23  1103.  A plaintiff must set forth "what is false or
24  misleading about a statement and why it is false."  <u>Id.</u>
25  at 1106 (citations and quotations omitted).
26  Counterclaimants have met this standard because they have
27  identified who (IJL and Dolan), when (prior to the
28

franchise agreements), how (over the telephone and face to face), and which specific fraudulent statements were made in conjunction with the sale of a franchise.  (See Countercl. ¶¶ 59-60, 71-74.)  They have also shown what is false about these statements by giving the true facts about the franchise system at paragraph 60 of the Counterclaim.

## C.   Seventh Claim

The seventh claim is based on California Business and Professions Code section 17200 and alleges IJL engaged in illegal, fraudulent, and unfair business practices in connection with its dealings with its franchisees. (Countercl. ¶¶ 88-93.)  Defendants' primary basis for arguing that the seventh claim should be dismissed is its contention that Nevada law governs the dispute between the parties.  As the court enforces the choice of law clause as to section 17200, it grants the Motion to Dismiss the seventh claim, without leave to amend.

## IV. CONCLUSION

For the reasons set forth above, the Court denies the Motion as to fourth claim and grants the Motion as to the seventh claim, without leave to amend.

Dated:  October 21, 2008 

VIRGINIA A. PHILLIPS
United States District Judge

16